

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BENAJAMIN TAGGER,<br><br>*Plaintiff,*<br><br>-against-<br><br>THE STRAUSS GROUP LTD., and SABRA<br>DIPPING COMPANY, LLC,<br><br>*Defendant(s).* | Case No. **CV 18 - 2923**<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED**<br><br>**COGAN, J.** |

The Plaintiff, BENJAMIN TAGGER, Pro Se, (Hereinafter referred to as "Plaintiff),

as and for his complaint against the defendants, THE STRAUSS GROUP LTD., and SABRA

DIPPING COMPANY, LLC, alleges as follows:

## PARTIES

1.      Plaintiff, BENJAMIN TAGGER, residing and permanently domiciled in Kings

County, City and State of New York, formerly doing business in Turkey, from 1993 to 2008, is

an individual, and permanently domiciled in Kings County, City and State of New York.

2.      Defendant, THE STRAUSS GROUP LTD., formerly known as STRAUSS-

ELITE LTD, on or about February 2007, changed its name to STRAUSS GROUP LTD., is an

Israeli publicly-traded entity with a headquarter and a principal place of business at 49 Hasivim

Street, POB 194, Petach Tikva,  The Defendant STRAUSS GROUP LTD. (Hereinafter referred

to as "STRAUSS GROUP"), together with its subsidiaries, develops, manufactures, markets, and

sells various food and beverage products in Israel, North America, Europe, and internationally.

The company operates through Health & Wellness; Fun & Indulgence; Israel Coffee;



International Coffee; International Dips & Spreads; and Other. STRAUSS GROUP LTD., is a

subsidiary of Strauss Holdings Ltd. The STRAUSS GROUP LTD., sells over a Billion Dollars

coffee, chocolate and the fresh salads in the United States directly and through its joint venture

STRAUSS-PEPSICO.

    2.    Defendant, SABRA DIPPING COMPANY, LLC, is foreign corporation,

authorized to do business in the State of New York. Upon information and belief, the

defendants, THE STRAUSS GROUP LTD., and SABRA DIPPING COMPANY, LLC, are one

and the same and united in interest.

<div align="center">JURISDICTION</div>

    3.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).

The amount in controversy in this diversity action exceeds $75,000 as per § 1332(a).  The

Defendant STRAUSS GROUP is not entitled to raise the procedural defense of sovereign

immunity in this action because it meets two of the immunity exceptions under 28 U.S.C.A. §

1605(a): waiver and commercial activity.  The first exception, waiver, applies because Israel has

waived sovereign immunity under the Treaty of Friendship, Commerce and Navigation between

the United States of America and Israel.  The Article V of the Treaty provides in pertinent part

that: 1. Nationals and companies of either Party shall be accorded national treatment and most-

favored-nation treatment with respect to access to the courts of justice and to administrative

tribunals and agencies within the territories of the other Party, in all degrees of jurisdiction, both

in pursuit and in defense of their rights. It is understood that companies of either Party not

engaged in activities within the territories of the other Party shall enjoy such access therein

without any requirement of registration or domestication.

<div align="center">2</div>

Further, the Defendant STRAUSS GROUP has engaged at home in "commercial" activity in the United States as follows: In addition to selling its products and services together with its subsidiaries, developing, manufacturing, marketing, and selling various food and beverage products, the Defendant STRAUSS GROUP operates through Health & Wellness; Fun & Indulgence; Israel Coffee; International Coffee; International Dips & Spreads; and Other. STRAUSS GROUP LTD., is a subsidiary of Strauss Holdings Ltd.

## BACKGROUND

5.     That on or about the 15th day of April, 1999, the defendant STRAUSS GROUP's predecessor-in-interest, M/s Elite Industries Ltd., as creditor, by and through its attorneys, Joseph Gross and/or Shay Gross, and Plaintiff BENJAMIN TAGGER, as creditor, and Rochelle Tagger, his wife, by and through their attorneys, Law Firm of Horowitz & Associates, entered into a written settlement agreement in Tel Aviv, Israel, whereas, the parties agreed to the existence of a foreclosure action and agreed to settle all claims and litigation.

6.     That on or about the 15th day April, 1999, the Plaintiff BENJAMIN TAGGER, as Debtor, and the defendant STRAUSS GROUP's predecessor-in-interest, Elite Industries Ltd, as Creditor, entered into a Compromise Agreement, in Tel Aviv, Israel, attached hereto as Exhibit "A", wherein, among other things, it was declared, stipulated and agreed between the parties as follows:

1.     The creditor will give its consent to close the claims collection file in regard to the foreclosure on the property known as block 6665, parcel 272 on its part (Hereinafter: "The property"), when all the conditions listed below have been met in aggregate;

A. The Debtor shall pay the Creditor within 30 days from the date of signing the Compromise Agreement equal to US $60,000 according to the known representative exchange rate at the actual time of payment.

3

B.  In addition, the Debtor agreed to pay the Creditor an extra sum of US $25,000 in 10 monthly installments of US $2,500 in shekels, equally and successively, each according to the representative exchange rate on the actual payment day each month starting on June 1, 1999 and the first of each consecutive month and that is without additional charge for indexation and interest.

C.  As security to meeting the payments listed in subsection (B) above the Debtor assigned to the benefit of Attorney Gross' Office in Netanya – the Creditor's POA, his right via a bank guaranty secured by the tenant of the property owned by the Debtor's wife, Rachel Tagger, unconditionally guarantying the sum of Twenty-Five Thousand ($25,000) Dollars commencing **from January 2001.** The Creditor was entitled to use this absolute bank guaranty only if the Debtor did not meet one or more of the installments listed in Section 3B above.

D.  Until 7 days of delay in payments will not be considered as failure in meeting the payments pursuant to Subsection B of the Compromised Agreement.

(See Compromise Agreement, attached hereto as Exhibit "A").

7.      As per the aforesaid Compromise Agreement, it was declared, stipulated and agreed between the parties as follows:

4(A).   The Credit will present to Attorney Yossifoff (Hereinafter: "The Trustee") a request to cancel and vacate the foreclosure on the property as described in preamble to the agreement.

4(B)    The Trustee to provide the Creditor with an undertaking whereby he will not exercise the request to cancel the foreclosure, until it has been clarified that all the conditions that allow the creditor to receive all the funds and securities as described in Section 3 of the Compromised Agreement above referred to have been fulfilled.

4(C)    For the avoidance of doubt, the stay of exit of Debtor, BENJAMIN TAGGER from the country order shall not be invalidated, except after the presentation of all funds and  documents as described in Article 3 of the Compromise Agreement by the Trustee to Attorney Joseph Gross, PA for the Creditor.

(See Compromise Agreement, attached hereto as Exhibit "A").

4

8.     As per the Compromise Agreement, it was further declared, stipulated and agreed between the parties as follows:

1.     The Trustee shall forward to the Office Attorney Joseph Gross from Netanya, immediately and not later than 14 days from the date of receipt of the cancellation forms and cancellation of the foreclosure, all the funds as described in Article 3 of the Compromised Agreement (checks drawn in the name of Attorney Joseph Gross and the Bank Guarantee)      .

2.     Compliance with the conditions as described in Article 2 of the Compromised Agreement, and especially making all payments in accordance with the Compromise Agreement, completely and sooner is subject to execution, final settlement, and closing their claims, their demands or monetary claims and/or others mutually by parties for it in every matter and everything related to their business relations the subject of the claims executions case.

3.     If the Debtor won't fulfill this Compromise Agreement in time and fully, the Creditor is entitled to exercise its rights of payment through the guaranty as described in Article 3C of the Compromise Agreement and may take action against the Debtor(s) together and separately in execution of claims procedures for the balance of the unpaid debt in  the claims execution case all at once and without any discounts. That the Debtor(s) explicitly declared and affirmed that in the event of the validity of the stay of exit from the country order    against the Debtor, BENJAMIN TAGGER shall be reinstated and a stay of his exit from the country order against Debtor shall also be given.

(See Compromise Agreement, attached hereto as Exhibit "A").

9.     As per the Compromise Agreement, it was further declared, stipulated and agreed between the parties as follows:

The Creditor confirmed that if the Debtor paid the total of US $85,000 as described in the Compromise Agreement, it shall be deemed full and final settlement of claim amount in the claims execution case including the principal, interest, indexation, Attorneys' fees and Value Added Tax and all this as stipulated amount that will be paid in full and in time under the provisions of the Compromise Agreement.

(See Compromise Agreement, attached hereto as Exhibit "A").

10.    That despite the Plaintiff's compliance with the Compromised Agreement, in bad faith, the defendant, STRAUSS GROUP, 12 years later, filed a petition and/or an application on or about 2011, and 11 years after all of the checks should have been honored, requesting that the State Collections Office take actions against Plaintiff BENJAMIN TAGGER for the purpose of the collection of the value of the check.  In its request STRAUSS GROUP requested that several orders be given by the Collection Office against Plaintiff BENJAMIN TAGGER, including but not limited to prohibition of right to receive or renew drivers license, prohibition on the right to receive or renew passport, probation on the right to use a credit card, restraining use of personal bank accounts, and prohibition on the right to leave the country.   The State Collection office denied these requests. (Collection Office Record, File # 16-113 88-96-9, 16.2.2011). Significantly, prior to the aforesaid malicious filings with the Collection Office against the Plaintiff, BENJAMIN TAGGER, the last notice from the defendant, STRAUSS GROUP to the Plaintiff, BENJAMIN TAGGER or his attorneys, was purportedly served on May 2000, despite the fact that several instructions and directions from the Collection Office to the defendant, STRAUSS GROUP, after the commencement of July 2000 action, to serve and send notices to the Plaintiff in regard to the action and proceedings then pending with the Collection Office.  It is the Plaintiff's belief that such disregard of the Collection Office's instructions and directions were designed to prejudice and maliciously prosecute the Plaintiff.

11.    Thereafter on or about July 2011 the Collection Office issued a stop-exit order against BENJAMI TAGGER.  According to records of the Ministry of Interior (which were filed by STRAUSS GROUPs with the Collection Office), Plaintiff had not then visited Israel from December 3, 2010 until July 2013, a fact indicating that BENJAMIN TAGGER was then residing outside of Israel. Plaintiff BENJAMI TAGGER entered Israel for a visit on July 5, 2013,

intending to return to Turkey on July 9, 2013.  Unbeknown to Plaintiff BENJAMIN TAGGER,

STRAUSS GROUP had obtained a stop exit order preventing the Plaintiff from leaving Israel.

12.     According to Collection Office records, in July of 2013, as a result of the fact that

Plaintiff's exit from Israel was denied, Plaintiff requested removal of the stop exit order,

asserting that Plaintiff had paid the entire debt under the settlement agreement, that Plaintiff was

then and since 1999 a resident of Turkey, not of Israel, and that the action taken by STRAUDD

GROUP was vindictive and would cause Plaintiff serious damage. (Collection Office Record,

File # 16-113 88-96-9, 10.7.2013) The Collection Office ordered STRAUSS GROUP to respond

to Plaintiff request to remove the stop-exit order, leaving the order in force in the meantime.  On

July 14, 2013 STRAUSS GROUP responded, claiming among things, that under the Israeli law

of collection "an Israeli citizen who leaves the country for a few years and his life is centered

outside of Israel for a few years, is not to be considered a non-resident for purposes of issuance

of stop-exit order for debt collection." Shortly thereafter, the Collection Office issued a decision

requiring Plaintiff to deposit with that Office the sum of 100,000 NIS, and to obtain the signature

of two guarantors for the debt that STRAUSS GROUP asserted against him, as a precondition to

lifting the stop-exit order. (Collection Office Record, File # 16-113 88-96-9, 180.7.2013).  (See

Exhibit "B" attached hereto and made a part hereof).

13.     That on or about July 24, 2013, Plaintiff BENJAMIN TAGGER appealed this

Collection Office decision requiring him to make the above indicated payment and provide

guarantors in order to leave the country.  On August 6, 2013, Magistrate Court Judge Semadar

Kolndar-Abromovitz heard the Plaintiff's appeal and unconditionally cancelled the stop-exit

order, finding that under the law of Israel Plaintiff BENJAMIN TAGGER is a foreign resident

whose exit from Israel cannot be stopped in the circumstances of this case, and that in addition STRAUSS GROUP had been at fault in this matter by not using the bank guarantee that it had been given years earlier by the Plaintiff BENJAMI TAGGER to guarantee full payment of the debt. (Tagger v. Strauss Appeal 46625-07-13, Netanya Magistrate's Court, 6.8.2013).  In an interim decision of the Collection Office, while the merits of Strauss' case for collection of debt were being considered, the Collection Office wrote in a decision issued by it that Strauss had asked for collection of the debt with "unclean hands", given the fact that it had in its possession a bank guarantee which it did not use to collect the debt, and instead delayed the collection procedure.  (See Exhibit "C" attached hereto and made a part hereof).

14.      By reason of the foregoing, any and all proceedings and actions commenced by the Defendant / Creditor, against the Plaintiff / Debtor in Israeli courts or tribunal and the Ministry of Interior to not exit the Plaintiff / Debtor Israel without making payments to the Defendant / Creditor were against the law, and were done in bad faith, and/or were malicious and calculated to harm and hinder the Plaintiff / Debtor and destroy his business so that a new distributor be appointed charging more money for the Coffee and other health food products imported y the Plaintiff in Turkey to his financial detriment and infliction of his emotional distress and other injuries to be determined at trial by the jury.

15.      In a determination dated 11/26/2013, made by the Bailiff's Office located in Netanua, Israel, it was determined that in accordance with *D.Bar Ophir, Bailiff's Office – procedures and rules (Sixth Edition)*, on pp 196, "Claims relating to the identity of the persons responsible for delay and damage caused to the debtor [Benjamin Tagger] as a result of this delay – these arguments will be heard in the competent Court and not in the Bailiff's Office." leading to the filing of the instant complaint against the defendants.

8

## AS AND FOR A FIRST CAUSE OF ACTION

16.     Plaintiff incorporates by reference paragraphs 1 through 29 above as if fully set forth herein.

17.     That due to the bad faith and breach of the Compromiser Agreement by the Defendant, among other things reporting the Plaintiff with the Israeli authorities and obtained an order and ruling against the plaintiff as a person who would flee Israel prior to making the payment of the debt to the Defendant, and/or, in the event the debtor has capacity to pay the debt as ordered in its entirely or in installments that were determined, the Plaintiff was directed to be in need to appear for an investigation of his capacity within 21 days of that order and ruling of the court entered upon the ex-parte application of the Defendant without any notice.

18.     Due to the non-service of any notice, despite the fact that the compromise agreement between the parties proving for the service of a notice upon the Plaintiff or his attorneys in Israel, the Defendants did not do so, in light of the applicable article 67(D) of the Israeli law, the Plaintiff was seen  by the authorities and business community as "a capable person with the ability to avoid paying his debts", thus the Plaintiff was forced to prepare and present and file an updated questionnaire, along with a letter of waiver about the confidentiality of the documents for verification of his incomes and expenses.

19.     Upon non-compliance, the execution registrar, at the request of the Defendant / Creditor, would have been arrested and detained the Plaintiff /Debtor since his name was entered and recorded in the Exit Control List of issued by the Interior Ministry of Israel upon the false and fabricated application of the Defendant / Debtor without any notice or warning in violation of the Compromised Agreement.

20.     Upon information, and belief, upon the false and baseless application of the

9

Defendant / Creditor, a purported order against the Plaintiff / Debtor was issued directing the arrest of Plaintiff if he attempt to leave Israel without paying the Creditor / Defendant, THE STRAUSS GROUP.

21.    The purported Exit Control List under which the Exit Control Authorities assumed to act was and still is void for the reason that the Plaintiff /Debtor name was entered and recorded in the Exit Control List of issued by the Interior Ministry of Israel upon the false and fabricated application of the Defendant / Creditor, THE STRAUSS GROUP without any notice or warning to the Plaintiff or his attorneys in Israel in violation of the Compromised Agreement.

22.    The statutory period for the filing of a complaint on the claim and cause of action has not expired.

23.    By reason of the facts and circumstances set forth above, plaintiff was deprived of his liberty and was made ill and was subjected to ridicule, scorn, and contempt by those knowing of his implied detention and was otherwise damaged and injured in the sum of Ten Million ($10,000,000) Dollars.

## AS AND FOR A SECOND CAUSE OF ACTION
(Defamation)

24.    Plaintiff incorporates by reference paragraphs 1 through 23 above as if fully set forth herein.

25.    That in an action entitled Tagger vs. the Strauss Group Ltd., the magistrate court in Netanya, by a decree and order dated August 6, 2013, made by the Honorable Judge Smadar Collander-Abramovitz, after entertaining his appeal, regarding the disturbing claim the debt was categorically not settled and the debt today stands at about 270 thousand NIS although all the

10

checks were cashed, except for the last unsigned check which was not brought to the Plaintiff / Debtor's attention in a timely manner negligently or intentionally or in bad faith.

26.     That rather than notifying the plaintiff / Creditor of this inadvertently unsigned check or chasing the bank guaranty, the Defendant. Debtor in bad faith in violation of the Compromised Agreement resorted to the Ministry of Interior and placed in his in the exit control list thus defaming the Plaintiff / Debtor.

27.     Plaintiff alleges that Defendants caused to be published in the Exit Control List, statements made to 3rd parties by the Defendants, and its employees and servants, each of them in concert, jointly and severally, which statements were understood as defamatory and slanderous.

28.     Plaintiff alleges that the statements made by the Defendants, and its employees and servants, were indented to damage the reputation of, or were made with reckless disregard knowing that the statements would damage the reputation of Plaintiff.

29.     Plaintiff alleges that the false statements were intentional disseminated.

30.     Plaintiff contends that the statements made and putting the Plaintiff / Creditor's name on the Exit Control List, constituted malice for which punitive damages are warranted.

31.     Plaintiff contends that the actions and the defamatory and slanderous statements made for exit control list filings had the desired effect and were direct and proximate cause or irreparable harm and damage to his character and reputation, and caused damage to his business, in a sum to be proven at the time of trial.

32.     Plaintiff further alleges that said actions, and the defamatory and slanderous statements made by Defendants about the Plaintiff placed Plaintiff in an injurious falsehood and in a false light, resulting being held up to public and private ridicule.

33.     As a direct and proximate result of being placed in Exit Control List, for not

paying a purported substantial debt which directly reflected on his business and ethical

performance, Plaintiff was harmed and damaged in a sum to be proven at the time of trial.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Conspiracy)

34.     Plaintiff incorporates by reference paragraphs 1 through 33 above as if fully set

forth herein.

35.     Plaintiff contends that the conspiracy of the Defendants to deprive Plaintiff of his

liberty, as well as his business and livelihood constituted a plan of action, engaged in by

Defendants, and its employees and servants, in color of Israeli laws, and in their power, to

engage in fabricating charges of non-payment while having a bank guaranty in their possession,

which the defendants knew or should have known, were unfounded, malicious and without

cause.

36.     Plaintiff asserts that the actions of the defendants, constituted a conspiracy to

deprive Plaintiff f his rights and privileges as a United States person, domiciled in the State of

New York.

37.     Plaintiff further alleges that the actions of the Defendants, constituted a joint

conspiracy to engage in an abuse of process by using the Israeli judicial system and Ministry of

Interior for a purpose for which it was not enacted.

38.     Plaintiff contends that the actions of Defendants, their servants and employees,

and each of them, by engaging in abuse of the judicial system and interior ministry, cause

Plaintiff injury and damages, in a sum to be proven at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Negligence)

12

39.     Plaintiff incorporates by reference paragraphs 1 through 38 above as if fully set forth herein.

40.     The acts and/or omissions of Defendant, its attorneys, employees and agents, constitute an action of negligence.

41.     As a result of the acts and/or omissions of Defendant, its attorneys, employees and agents, Plaintiff is entitled to an award of damages in an amount that is to be determined, including an award of punitive damages.

<div align="center">

AS AND FOR FIFTH CAUSE OF ACTION
(Obstruction of Justice)

</div>

42.     Plaintiff incorporates by reference paragraphs 1 through 41 above as if fully set forth herein.

43.     That on or about 2011, in Israeli Court, the defendant wrongfully and without giving any notice to the Plaintiff, the Defendant, commenced an ex-parte proceedings and action against the Plaintiff in Israeli courts or tribunal and the Ministry of Interior based on false and wrong information, and testimony,  to not exit the Plaintiff / Debtor Israel without making payments to the Defendant / Creditor were against the law, and were done in bad faith, and/or were malicious and intentional and calculated to harm and hinder the Plaintiff / Debtor.

44.     That the aforesaid baseless and malicious proceedings impeded the trial and investigation of the underlying matter resulting in a determination dated 11/26/2013, made by the Bailiff's Office located in Netanua, Israel, the Plaintiff's claims relating to the identity of the persons responsible for delay and damage caused to the Plaintiff as a result of this delay – the Plaintiff's arguments were not heard in that forum.

45.     Furthermore, by reason of the false and wrong and prejudicial testimony and submission by the Defendant, its attorneys, employees and agents, in Israeli court, the Plaintiff was deprived justice.

46.     As a result of the acts and/or omissions of Defendant, its attorneys, employees and agents, Plaintiff is entitled to an award of damages in an amount that is to be determined, including an award of punitive damages.

## AS AND FOR SIXTH CAUSE OF ACTION
### (Fraud on Court)

47.     Plaintiff incorporates by reference paragraphs 1 through 46 above as if fully set forth herein.

48.     As a result of the acts and/or omissions of Defendant, its attorneys, employees and agents, as more fully set forth in this complaint, the Defendants perpetrated fraud on court and defrauded Plaintiff.  Had the Plaintiff been served with any notice or due process, the Plaintiff should not have been detained in Israel for 32 days.

49.     As a result, Plaintiff is entitled to an award of damages in an amount that is to be determined, including an award of punitive damages.

## AS AND FOR SEVENTH CAUSE OF ACTION
### (Negligent and/or Intentional Infliction of Emotional Distress)

50.     Plaintiff incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

51.     Plaintiff asserts that the conspiratorial actions of the Defendants, and their servants and employees, and each of them, engaged in a pattern of conduct which would cause Plaintiff to suffer and/or negligent infliction of emotional distress.

14

52.     Plaintiff contends that Defendants, their servants and employees, and each of them, had a duty to refrain from engaging a harmful activity, or making false, defamatory statements filing with the Israeli judicial system and interior ministry,

53.     Plaintiff asserts that defendants, and their agents and employees, and each of them, had a duty to refrain from engaging in harmful activity, or making false, defamatory statements concerning Plaintiff and his business.

54.     Plaintiff asserts that defendants, and their agents and employees, and each of them, owed him a duty to exercise due care in not subjecting him to foreseeable risk of emotional distress.

55.     Plaintiff alleges that the foreseeability of harm and damage were apparent to the most common person.

56.     As a direct and proximate result of the actions of the defendants, Plaintiff suffered emotion stress, emotional distress, anxiety, sleeplessness and other and further damages to be proven at the time of trial.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
(Interference with Contractual Relationship)

57.     Plaintiff incorporates by reference paragraphs 1 through 56 above as if fully set forth herein.

58.     Plaintiff alleges that the actions of the Defendant, and agents and employees, and each of them, constituted an interference with contractual relations.

59.     Plaintiff asserts that Defendants knew or should have known, that as a businessman, Plaintiff had a contract with them as a wholesale distributor of coffee which he distributed to various business in Turkey and USA.

15

60.     Plaintiff alleges that he has been harmed and damaged as a direct result of defendants' and their agents and employees' malicious actions in a sum to be determined at the time of trial.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
(Violation of Human Rights)

61.     Plaintiff incorporates by reference paragraphs 1 through 61 above as if fully set forth herein.

62.     That due to the malicious and calculated actions of the Defendants and their servants and employees, the Plaintiff's life, integrity and health, were in jeopardy and the Plaintiff was deprived of his human rights and liberty.

63.     As the factual circumstances set-out above, and incorporated by reference herein, the Defendants STRAUSS GROUP and SABRA DIPPING COMPANY, LLC, who are one and the same, violated Plaintiff's BENJAMIN TAGGER civil and human rights to freedom of movement and the corresponding right to engage in his profession in the country of his residence.  This violation occurred in particular because Defendants requested that Israeli authorities prevent Plaintiff from leaving Israel without fully disclosing to the authorities that the Defendants, knew or should have known that the Plaintiff was no longer a resident of Israel, or without making duly diligent and reasonable efforts to determine that the Plaintiff was then resident in Turkey, while knowing that the Plaintiff and his wife had left Israeli and taken an apartment in Turkey,  This violation of Plaintiff's rights occurred in particular for the additional reason that Defendants did not disclose to the Israeli authorities that at the time that the check in question was to be presented to Plaintiff bank for payment, but could actually not be paid due to a lack of signature, Defendant STRAUSS GROUP held in its possession a fully valid bank guarantee which it chose not to use, thereby waiving the right to collect on the basis of guarantee

provided. In addition, the debt owed to STRAUSS GROUP was not in relative terms a large debt, and reasonable efforts were not made by the STRAUSS GROUP to collect the debt without using the procedure which resulted in preventing the Plaintiff from leaving Israel.

64.     In the foregoing particular circumstances, STRAUSS GROUP's making a request to the Israeli authorities to prevent Plaintiff exit from Israel constituted the commission of a civil wrong under Israeli law, a violation of basic civil liberties under Israeli law and a violation of human rights under international laws including the followings:

Article 13 of the Universal Declaration of Human Rights states:

(1) Everyone has the right to freedom of movement and residence within the borders of each State.

(2) Everyone has the right to leave any country, including his own, and to return to his country.

Article 12 of the International Covenant on Civil and Political Rights incorporates the right to freedom of movement into treaty law:

(1) Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement and freedom to choose his residence.

(2) Everyone shall be free to leave any country, including his own.

(3) The above-mentioned rights shall not be subject to any restrictions except those provided by law, are necessary to protect national security, public order (order public), public

health or morals or the rights and freedoms of others and are consistent with the other rights

recognized in the present Covenant.

65.   As a direct and proximate result of the actions of the defendants, Plaintiff suffered

emotion stress, emotional distress, anxiety, sleeplessness and other and further damages to be

proven at the time of trial.

<div align="center">PRAYER FOR RELIEF</div>

A.   Economic and noneconomical damages as provided under the applicable law and
deemed appropriate by a jury;

B.   Attorney fees and litigation expenses as provided under applicable law;

C.   Punitive damages against defendants as provided under applicable law to the
extend deemed appropriate by the jury;

D.   Costs as provided under applicable law;

E.   Pre-judgment and post judgment interest as provided under applicable law; and,

F.   For such other and further relief as the Court nay deem just proper and equitable.

<div align="center">JURY DEMANDED</div>

Plaintiff hereby demands a trial by jury on all causes of action for which a jury is

Permitted.

Brooklyn, New York
Date this 14th day of May, 2018

BENJAMIN TAGGER
Plaintiff *Pro Se*
2928 West 5th Street
Brooklyn, New York 11224
Tel: (917) 767-7341
E-Mail: BenjaminTagger@gmail.com

<div align="center">18</div>



**Rev.com, Inc.**
251 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com

*ata*

Member # 252626

## Certification of Translation Accuracy

Translation of **"Compromise agreement and ruling – Benjamin and Rochelle Tagger"** from **Hebrew** to **English**

We, Rev.com Inc., a professional translation company, hereby certify that the above-mentioned document(s) has (have) been translated by experienced and qualified professional translators and that, in our best judgment, the translated text truly reflects the content, meaning, and style of the original text and constitutes in every respect a correct and true translation of the original document.

This is to certify the correctness of the translation only. We do not guarantee that the original is a genuine document, or that the statements contained in the original document are true. Further, Rev.com, Inc. assumes no liability for the way in which the translation is used by the customer or any third party, including end users of the translation.

A copy of the translation is attached to this certification.

David Abrameto, VP of Operations

Rev.com, Inc.

Dated: December 10, 2016



**Rev.com, Inc.**
251 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com



Member # 252626

## Compromise agreement

Tel Aviv on the **15th** day in the month of **April** 1999.

### Between

Elite Industries Ltd.
Represented by Attorney Joseph Gross and/or Shay Gross
and/or Galit Ossie-Shara'abi and/or Gadi Chen
Lital Schulz and/or Ran Lobovski
7, Ha'Atzmaut square, Netanya 42271
Tel.: 09-8626464; Fax: 09-8617141          {Hereinafter: "The creditor")

### And between

Benjamin Tagger I.D. 5542386 (Hereinafter: "The Debtor")

### And between

Tagger Rochelle Passport 700199562 (American passport) (Hereinafter: "Debtor1")
The Liable parties are both represented by
Law firm of S. Horowitz and Assoc.
31 Ahad Ha'am St., Tel Aviv 61024
Tel. : 03-5670666 , Fax: 03-7180801

**Whereas :**  And against the Liable - Mr. Tagger Benjamin exists a claims execution file no. 66-11388-96-6 at the bailiffs Office in Netanya (Hereinafter: "Claims execution file").

**And whereas:** Mrs. Tagger Rochelle Passport no. 700199562 (American passport) agrees to be to be added as a liable party from claims execution case as described in the body of this Compromise Agreement.

**And whereas:** And both the parties are willing to reach a compromise agreement according to which the Debtor shall pay the creditor a total of US $ 85,000  against its consent to closure of collection file and deletion of the foreclosure imposed on it on 7.30.1988 for the Debtors share in a property known as Block 6665, parcel 271 in the Land Registry office in Netanya (Hereinafter: "The foreclosure").

**And whereas:** And parties wish to put their agreement in writing.

**Thus it is declared, stipulated and agreed between the parties as follows:**

1.    The preamble to this agreement constitutes an integral part thereof.

2.    Debtor1 shall be be added a debtor in the claims execution case upon receiving written confirmation from the trustee as described in section 4 below.

3.    The creditor will give its consent to close the claims collection file and deleting the foreclosure on the property known as block 6665 parcel 272 on its part (Hereinafter: "The property"), when all the conditions listed below have been met in aggregate:

Page 2 of 7



**Rev.com, Inc.**
251 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com



Member # 252626

---

A. The debtor shall pay the creditor within 30 days from the date of signing this compromise agreement equal to $ US 60,000 according to the known representative exchange rate at the actual time of payment.

B. In addition, the debtor shall the creditor an extra sum of US $ 25,000 in 10 monthly installments of US $2,500 in shekels, equally and successively, each according to the representative exchange rate on the actual payment day each month starting on. 6.1.1999 and the first of the each consecutive month and that is without additional charge for indexation and interest.

C. As security to meeting the payments listed in subsection (b) above the debtor shall assign to the benefit of Attorney Gross's Office in Netanya - the creditors POA, his right via a bank guarantee of the renter of the property, Mr. Eric Kilman, a Bank guarantee **from January 2001 worth US $25,000.** The creditor will be entitled to use this bank guarantee only if the debtor cannot meet one or more of the installments listed in section 3 b above.

D. Until 7 days of delay in payments will not be considered as failure in meeting the payments pursuant to subsection B.

4. A.   The credit will present to Attorney Yossifoff (Hereinafter: "The trustee") a request to cancel the foreclosure on the property as described in preamble to the agreement.
   B. The trustee will provide the creditor with an undertaking whereby he will not exercise the request to cancel the foreclosure, until it has been clarified that all the conditions that allow the creditor to receive all the funds and securities as described in section 3 above have been fulfilled.
   C. For the avoidance of doubt, the stay of exit from the country order shall not be invalidated, except after the presentation of all funds and documents as described in section 3 above by the trustee to Attorney Joseph Gross, POA for the creditor

5. The trustee shall forward to the Office Attorney Joseph Gross from Netanya, immediately and not later than 14 days from the date of receipt of the cancellation forms and cancellation of the foreclosure, all the funds as described in section 3 above - checks drawn in the name of Attorney Joseph Gross and the Bank Guarantee.

6. Compliance with the conditions as described in section 2 above, and especially making all payments in accordance with this compromise agreement, completely and sooner is subject to execution, final settlement, and closing their claims, their demands or monetary claims and/or others mutually by parties for it in every matter and everything related to their business relations the subject of the claims executions case.

7. If the debtor won't fulfill this compromise agreement in time and fully, the creditor is entitled to exercise the guarantee as described in section 3C above and take action against the debtors together and separately in execution of claims procedures for the balance of the unsettled debt in the claims execution case all at once and without any discounts. That the debtors explicitly declare and affirm that in the event of the aforementioned, the validity of the stay of exit from the country order against the debtor shall be reinstated and a stay of exit from the country order against debtor1 shall also be given.

The creditor confirms that if the debtor pays the total of US $85,000 as described in this compromise agreement it shall deem it as full and final settlement of claim amount in the claims execution case including the principal, interest, indexation, Lawyers fees and VAT and all this as stipulated under the above amount that will be paid in full and in time under the provisions of this compromise agreement.

Page 3 of 7

"ב"

# הסכם פשרה

תל אביב, היום 15 בחודש אפריל שנת 1999.

**בין**

עלית תעשיות בע"מ
ע"י ב"כ עוה"ד יוסף גרוס ו/או שי גרוס
ו/או גלית אוסי-שרעבי ו/או גדי חן
ליטל שגלה/או רן לובובסקי
מכיכר העצמאות 7 נתניה 42 271
טלפון: 09 / 8626464 פקס: 09 / 8617141 (להלן: "הזוכה")

**לבין**

בנימין תגיר ת.ז. 5542386 (להלן: "החייב")

**לבין**

תג'יר רחל מס' דרכון 700199562 (דרכון אמריקאי) (להלן: "החייבת")

החייבים שניהם מיוצגים ע"י ב"כ
משרד עוה"ד ש. הורביץ ושות'
רח' אחד העם 31 תל אביב 61024
טל. 03-5670666 פקס: 03-5660974

**הואיל:** ונגד החייב - מר תגיר בנימין קיים תיק הוצל"פ מס' 35-13388-96-6 בלשכת ההוצאה לפועל בנתניה (להלן: "תיק ההוצל"פ").

**והואיל:** והגב' תגיר רחל מס' דרכון 700199562 (דרכון אמריקאי) מסכימה להתווסף כחייבת בתיק ההוצאה לפועל כמפורט בגוף הסכם פשרה זה.

**והואיל:** והצדדים מוכנים להגיע להסכם פשרה זה עם זה לפיו החייב ישלם לזוכה סך של 85,000 $ us כנגד הסכמתה לסגירת תיק ההוצל"פ ולמחיקת העיקול שהוטל ביום 30.7.1988 על חלקו של החייב בנכס הידוע כגוש 6665 חלקה 171 בלשכת רישום המקרקעין בנתניה (להלן: "העיקול").

**והואיל:** וברצון הצדדים להעלות על הכתב את הסכמתם.

**לפיכך הוצהר, הוסכם והותנה בין הצדדים כדלקמן:**

1. המבוא להסכם זה מהווה חלק בלתי נפרד הימנו.
2. החייבת תתווסף כחייבת בתיק ההוצאה לפועל במועד קבלת האישור בכתב מידי הנאמן, כמפורט בסעיף 8 להלן.
3. הזוכה תיתן הסכמתה לסגירת תיק ההוצל"פ ומחיקת העיקול על חלקו של החייב בנכס הידוע כגוש 6665 חלקה 171 (להלן: "הנכס"), וזאת בהתקיים כל התנאים המפורטים להלן במצטבר:

עלית תעשיות בע"מ

RUM ELIT-ACCOUNTING          TO    8617141                    P.03

(א) החייב ישלם לזוכה תוך 30 ימים ממועד חתימתו של הסכם פשרה זה, סך בש"ח השווה ל - $ 60,000 us על פי השער היציג הידוע במועד התשלום בפועל.

(ב) בנוסף, ישלם החייב לזוכה תשלום נוסף של $ 25,000 us ב- 10 תשלומים שקליים חודשיים שווים ורצופים של $ 2,500 us כ"א לפי השער היציג ביום התשלום בפועל בכל חודש החל מיום 1.6.1999, ובכל ראשון לחודש הבא אחריו וזאת ללא חיוב נוסף בהפרשי הצמדה למדד וריבית.

(ג) כבטוחה לקיום התשלומים הנזכרים בס"ק (ב) לעיל ימציא החייב לטובת משרד עו"ד גרוס מנתניה - ב"כ הזוכה, את זכותו על פי ערבות בנקאית של שוכר הנכס, מר אריק קולמן, זהו ערבות בנקאית מינ' 2001 בשווי של $ 25,000 us היה תהיה רשאית לעשות שימוש בערבות בנקאית זו רק אם החייב לא יעמוד באחד או יותר מהתשלומים הנזכרים בסעיף 3 ב' לעיל.

(ד) עד 7 ימים פיגור בתשלומים לא ייחשבו כאי עמידה בתשלומים לפי ס"ק ב'.

4. א. הזוכה תמציא לעו"ד יוסיפוף (להלן: "הנאמן") בקשה לביטול עיקול המקרקעין כמפורט במבוא להסכם.
   ב. הנאמן ימציא לזוכה התחייבות לפיה לא יפעיל את הבקשה לביטול העיקול אלא לאחר שהועברו לו סופית ובשלו כל התנאים המפורטים קבלת כל הכספים ונתבטחונות לזוכה כמפורט בסעיף 3 לעיל.
   ג. למען הסר ספק צו עיכוב היציאה מן הארץ לא יבוטל אלא לאחר המצאת כל הכספים והמסמכים כמפורט בסעיף 3 לעיל ע"י הנאמן לעו"ד גרוס יוסף ב"כ הזוכה.

5. הנאמן יעביר למשרד עו"ד נרוס יוסף מנתניה, מיד ולא יאוחר מתוך 14 ימים ממועד קבלת ספק הביטולים וביטול העיקול, את כל תכסמים כמפורט בסעיף 3 לעיל - בשקים המשוכים ע"ד נרוס יוסף ואת כתב הערבות הבנקאית.

6. מילוי התנאים כמפורט בסעיף 2 לעיל ובמיוחד ביצוע כל התשלומים על פי הסכם פשרה זה במלואם ובמועדם מהווה סילוק סופי נגמר של טענותיהם, דרישותיהם או תביעותיהם הכספיות בכפוף לצד אחד הזה כלפי זה, לפני עניין ודבר הקשור ביחסיהם העסקים נשוא תיק התובאנה לפועל.

7. במידה ונחייב לא יעמוד בהסכם פשרה זה במועדו ובמלואו, תהא הזוכה רשאית לממש את הערבות הבנקאית כמפורט בסעיף 3 ג' לעיל ולנקוט נגד החייב בהליכי הוצל"פ. החייבים לגבי כל יתרת החוב כמפורט בתיק התובאנה, כי במקרה כאמור, תוקפו של צו עיכוב היציאה מן הארץ נגד מצהירים ומאשרים כמפורט, תחזיר יוחזר על צו זו ויינתן צו עיכוב צו יציאה מהארץ כנגד החייב.

8. הזוכה מאשרת כי במידה ותחייב ישלם את הסך של $ 85,000 us כמפורט בהסכם פשרה זה היא תראה בכך סילוק מלא וסופי של סכום התביעה בתיק ההוצל"פ לרבות קרן, ריבית, הצמדה, הוצאות שכ"ט עו"ד ומע"מ פל זאת כאמור בכפוף לכך שהסכם הנ"ל ישולם במלואו ובמועדו על פי תנאי הסכם פשרה זה.

[signature]

עלית העשיות בע"ם

\\AMZR\VOLZ\ישראל\תיקים\העלית\הנבחנים\הכוחהסכם פשרה עלית חד"ר.doc

‎9. עם חתימתה על הסכם זה, יחוב הסכם הקודם בין הצדדים לעניין זה. ההבהרות ביום
‎1818.9. בכסף הנוסף.

‎10. הצדדים מבקשים מכבוד ראש ההוצאה לפעל לאשר הסכם זה ולתת לו תוקף של פסק
‎או החלטה.

‎ולראיה באו הצדדים על החתום:

_Rochelle Jaje_

‎בומן לברג                עינת הלשמ...
‎היזוב/.                   ...התובעת

‎שירלי הולצמן, עו"ד
‎מ.ר. 19482
‎ב. העובדץ שותף, עו"ד

‎חריגי התעודה, כי ואחויבים וניגיל רתנמנ לבני על מסלף חת.



Rev.com, Inc.
251 Kearny St. Suite 800, San Francisco, CA 94108
T: 888-369-0701 | support@rev.com | www.rev.com



Member # 252626

## Certification of Translation Accuracy

| Translation of **Perjury** from **Hebrew** to English |
| --- |

We, Rev.com, Inc., a professional translation company, hereby certify that the above-mentioned document(s) has (have) been translated by experienced and qualified professional translators and that, in our best judgment, the translated text truly reflects the content, meaning, and style of the original text and constitutes in every respect a correct and true translation of the original document.

This is to certify the correctness of the translation only. We do not guarantee that the original is a genuine document, or that the statements contained in the original document are true. Further, Rev.com, Inc. assumes no liability for the way in which the translation is used by the customer or any third party, including end users of the translation.

A copy of the translation is attached to this certification.

David Abrameto, VP of Operations

Rev.com, Inc.

**Dated: November 24, 2015**

Page 1 of 3















**Number: 005542386t**

### Ruling of the Execution Registrar
### Ephraim Tzizik

**Request of the Creditor from the date of:**      2/16/2011      **Issued on the date of: 2/16/2011**

**On the matter of the remedy:** Limitation of debtor in the file from receiving/renewing driving license
                             **Ruling:** Rejected

**On the matter of the remedy:** Limitation of the debtor in the file from receiving/renewing a passport
                             **Ruling:** Rejected

**On the matter of the remedy:** Limitation of the debtor in the file from making use of a debit card
                             **Ruling:** Rejected

**On the matter of the remedy:** Limitation of the debtor in the file as a limited client of the Bank of Israel
                             **Ruling:** Rejected

**On the matter of the remedy:** Limitation of the debtor in the file from leaving the country
                             **Ruling:** Rejected

### The Ruling

Placed before me is a request to apply limitations on the debtor, from the force of articles 66A and 66B of the Execution Law.

The debtor has not yet undergone a capacity investigation, and because the capacity of the debtor has not yet been examined, it is not possible to say that the debtor is a capable debtor who is avoiding his obligations.

At the same time, opinion justifies clarification of the ability of the debtor, in order to see if he is indeed a capable debtor who is avoiding his obligations.

The debtor will, within 30 days from today, submit a full questionnaire that is supported by documents to prove his incomes and expenses.

In the absence of presentation of documents as said above, the payment order will stand at an amount of 1,000 New Shekels per month. It is hereby clarified to the debtor, that after presentation of the documents, if he presents them, the payment order may change. It is also clarified to the debtor that the creditor is entitled to request that an additional capacity investigation be carried out.

The secretariat will produce appropriate payment coupons for the debtor.

If the debtor does not produce the required questionnaire and does not meet the payment order, the legal representative of the creditor may turn with a request to impose limitations, with referral to this ruling.

  St. Suite 800, San Francisco, CA 94108
T: 888-369-0701 | support@rev.com | www.rev.com

Member # 252626

http://10.96.0.103/OnsetReform/HotWeb/Hadpass/Print.asp?Numerator=960647511v... 20/02/2011

נומרטור ט960647511 תיק 9-96-11388-16



בית משפט השלום נתניה - 16
לשכת הוצאה לפועל

# העתק

16/02/2011
י"ב אדר א תשע"א

מספר תיק : 9-96-11388-16
נומרטור : ט960647511
חייב : 1 - תגר בנימין
ת.ז: 005542386

תחלטת רשם ההוצאה לפועל
ציזק אפרים

בקשת הזוכה מתאריך:            16/02/2011    ניתנה ביום: 16/02/2011
בעניין סעד : הגבלת חייב בתיק מלקבל / לחדש רשיון נהיגה נדחתה    הוחלט : נדחה
בעניין סעד : הגבלת חייב בתיק מלקבל / לחדש דרכון    הוחלט : נדחה
בעניין סעד : הגבלת חייב בתיק לעשות שימוש בכרטיס חיוב נדחתה    הוחלט : נדחה
בעניין סעד : הגבלת חייב בתיק כלקוח מוגבל לבנק ישראל    הוחלט : נדחה
בעניין סעד : הגבלת חייב בתיק לצאת מהארץ    הוחלט : נדחה

## החלטה

מונחת בפני בקשה להטלת תגבלות על חחייב, מכח סעיפים 66 א' ו-
66 ב' לחוק החוצאה לפעל.

לחייב טרם נערכת חקירת יכולת, וחיות ויכולת חחייב טרם נבדקח
לא ניתן לומר כי כי חחייב חינו חייב בעל יכולת חמשתמט
מחובותיו.
יחד עם זאת, חדעת מצדיקח בירור יכולתו של חחייב, על מנת לראות
האם חינו אכן בעל יכולת חמשתמט מחוב.
חחייב יגיש תוך 30 יום מחיום שאלון מלא ונתמך במסמכים לתוכחת
הכנסותיו וחוצאותיו.
בחינדר חגשת מסמכים כאמור לעיל, יעמוד צו תשלומים על סך של
1,000 ש"ח לחודש. מובחר בזח לחייב, כי בעקבות חגשת חמסמכים, אם
יגיש אותם, עשוי צו תשלומים לחשתנות. כן מובחר לחייב, כי
חזוכח רשאי לבקש לקיים חקירת יכולת נוספת.
חזוכרות ומצביע לחייב\תת שוברי תשלום, מתאימים.
חיח וחחייב לא ימציא חשבלון כדרש ולא יעמוד בצו חתשלומים,
תוכל ב"כ חזוכח לפנות בבקשה להטלת תגבלות, תוך חפנח לחחלטה
זאת.



**Rev.com, Inc.**
251 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com



Member # 252626

## Certification of Translation Accuracy

Translation of "**Compromise agreement and ruling – Benjamin and Rochelle Tagger**" from **Hebrew** to **English**

We, Rev.com Inc., a professional translation company, hereby certify that the above-mentioned document(s) has (have) been translated by experienced and qualified professional translators and that, in our best judgment, the translated text truly reflects the content, meaning, and style of the original text and constitutes in every respect a correct and true translation of the original document.

This is to certify the correctness of the translation only. We do not guarantee that the original is a genuine document, or that the statements contained in the original document are true. Further, Rev.com, Inc. assumes no liability for the way in which the translation is used by the customer or any third party, including end users of the translation.

A copy of the translation is attached to this certification.

David Abrameto, VP of Operations

Rev.com, Inc.

Dated: December 10, 2016



Page 1 of 7



Rev.com, Inc.
251 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com

Member # 252626

The magistrate court in Netanya

Different Civilian Appeal 46625-07-13 Tagger Vs. The Strauss Group Ltd. 06 August 2013

Before the Honorable Judge Smadar Collander-Abramovitz
The appellant Benjamin Tagger

Vs.

The respondent                                          The Strauss Group Ltd.

Present:
The appellant himself.
The appellant's POA Attorney Black
POA for the respondent Cohenovitz Yaniv

## Protocol

**The Respondent's representative:**

As a preliminary claim *preceding* a decision on which the appellant is appealing is actually a decision to cancel the restriction.

A decision of such a kind is one on which it should be decided to ask for permission from this authority, is not the case before us.

He filed an appeal, but he had to file a request from the Appellant Authority. Regarding the disturbing claim the debt was categorically not settled.

The debt today stands at about 270 thousand NIS. All the checks were cashed, except for the last check.

The last check in the sum of 10 thousand NIS is dated 99.

We tried to contact through my client's POA, sent letters to his lawyer, who represented him, but there was no reply.

There is an explicit ruling of the Supreme that shows that a stay of exit can be given to a foreign resident. The decision of the Hon. Registrar in the claims execution file was to deposit $100 thousand NIS and two more guarantors and then he can leave the country, we are not delay his departure from the country, the debate here is for depositing the bail and not for his exit.

Should have filed an appeal, but he has not file an appeal. On the Hon. registrar's decision, she makes her judgment that he appeals, I don't have a problem, but nobody's going to delay his departure, even the registrar is not delaying, told him to deposit, then could leave.

Further to the ruling based on special reasons, even here the court explicitly says that the applicant should give special reasons. One, he must prove his capability to deposit the guarantee and he did not do this, now did he. I brought a reference to this effect.



Rev.com, Inc.
251 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com

Member # 252626

The magistrate's Court in Netanya

Different Civilian Appeal 46625-07-13  Tagger Vs. The Strauss Group Ltd. August 6, 2013

**The appellant's representative:**

You can't ask a foreign resident who is here randomly after many years.

Bank guarantee is money, we can't ask him to bring guarantors who become debtors.

The appeal here is right.

**The respondent's POA:**

The last check was not settled. I have a letter that my client's previous POA sent, which tells him on 4.28.99 you did not comply with the agreement and you have a debt.

The grounds are that he did not know of the debt. The debt was created and a claim execution case was opened against him, as a part of which many severe proceedings were taken against him, foreclosures including foreclosures of movables done in his apartment. He came to an agreement as a part of the debt portfolio. He knew about it. There is an absolute delivery and evidence. He knew about the debt.

**POA for the appellant:**

Referring to section 66 A and also section 80. Actually there are two options, both sections in the Execution Proceedings Law that allow the Registrar to delay his exit. We discuss here regarding section 66 A(2).

We have to decide whether she had authority at all to implement the restriction. Referring to an appeal notice that I wrote. There was a request for the open proceedings before giving warning, upon opening the case, when the creditor explicitly claims that the debtor, the appellant here, lives abroad and his wife joins him in Turkey where he rented an apartment. We know that from 96 the appellant is not an Israeli this is judicial knowledge. In 2004 was decision by the head of the Execution Claims regarding a request to invite the debtor for a capability investigation. In the compromise agreement it says that my associate should have submitted a response to the deposition. No comment, so no respondent. The agreement says they pay $85 thousand, $60 thousand in the first signature when they shall then shall provide 10 checks.

Regarding the Court's question if I have proof that the last check was paid - my client cannot prove the payment but I can prove the last check.

In addition to this, a bank guarantee in the sum of 25 thousand dollars, that was valid for 3 years from the date of signing of the agreement, the bank guarantee if there had been one situation that one of the 10 checks, it turned out later that if there was no signature, they could not cash in the bank guarantee, the checks were drawn on Bank Hapoalim in Israel.


Rev.com, Inc.
251 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com


Member # 252626

Attorney Gross who was then the POA for respondent 2, wrote a letter to the current POA that all the checks had been settled on the due date and there is one unsigned check. But it doesn't make sense that they held bank guarantee worth 100 thousand NIS, why didn't they cash it in.

### The magistrate's Court in Netanya

**Different Civilian Appeal 46625-07-13  Tagger Vs. The Strauss Group Ltd. August 6, 2013**

**The respondent's POA:**

I don't know. Attorney Gross was handling it
We handled the case since last year. 2012. I have no idea why didn't they present the Bank Guarantee for collection.

**The appellant's POA:**

There was no authority here to place a restriction. All the law was required to do was appear within 21 days was judged 3 years later.

**The respondent's POA:**

The case was in the Claims Execution Office. There is a section in the Law which instructs that if the debtor changes his address it is his duty to update Claims Execution file, debtor has acted in bad faith for the whole period and didn't bother to update the address.

## Ruling

Before me is an appeal regarding the Hon. Registrar's decision in an application that was submitted by a foreign resident to cancel stay of exit from the country. The respondent's POA claims initially that it was a preliminary permission from the Appellant Authority was required and not an appeal. Section 80 to the Execution Claims Law stipulates that an appeal may be filed, inter alia,on the decisions by the Head of the Claims Execution in accordance with section 66 A 1 and 2 of the law. These sections talk about stay of exit from the country of a debtor, therefore I think that the appeal was submitted as per the law. I must say that the fact that the Registrar ruled that a stay of exit from the country can be given subject to depositing a total of 100 thousand NIS and also a guarantees by two guarantors, then from the applicant point of view here no decision was actually made in his request to delay his departure from Israel since he can't deposit the amount and the decision can be appealed as per the law.

As appears from the appeal and even from what the parties are now saying, we are dealing with an Claims Execution case which began in 96 when the parties in 99 reached a compromise agreement.

The respondent's POA argues that the last check of the checks that were deposited, which was in the sum of 2,500 dollars was not signed and therefore not settled.

As it appears from the POA for the applicant and also reviewing the agreement (section 3 C) tells us that a bank guarantee in the of $25 thousand dollars was given by the applicant here to ensure the provisions of the



Rev.com, Inc.
251 Kearny St. Suite 800, San Francisco, CA, 94108
T: 888-369-0701 | support@rev.com | www.rev.com



Member # 252626

compromise agreement.

I was not given any satisfactory explanation why when it was clarified that one check was not settled, no use was made of the bank guarantee which was almost 10 times higher than the amount in the check and why throughout these years nothing was done against the debtor.

The applicant is a foreign resident who lives in Turkey, in accordance with regulation 384 A to the civil procedure regulations when it comes to foreign resident, a stay of exit from the country is not given, except under exceptional circumstances and for special reasons

Page 7 of 7



בית משפט השלום בנתניה

עש"א 13-07-46625 תגר נ' שטראוס גרופ בע"מ

06 אוגוסט 2013

בפני כב' השופטת סמדר קולנדר-אברמוביץ

המערער                                    בנימין תגר

נגד

המשיבה                                    שטראוס גרופ בע"מ

נוכחים:
1  המערער בעצמו
2  ב"כ המערער עו"ד בלק
3  ב"כ המשיבה עו"ד כהנוביץ יניב
4
5
6
7                              **פרוטוקול**
8
9
10  **ב"כ המשיבה:**
11  כטענה מקדמית החלטה שעליה מערער המערער היא בעצם החלטה לביטול הגבלת.
12  החלטה מסוג זה היא החלטה עליה צריך להחליט לבקש רשות זה לא המקרה לפנינו.
13  הוא הגיש בקשת ערעור אבל היה עליו להגיש בקשת רשות ערעור. בנוגע לטענת הפרעתי חד משמעית
14  החוב לא נפרע.
15  החוב היום עומד על כ- 270 אלף ₪. השיקים נפרעו למעט השיק האחרון.
16  השיק האחרון ע"ס 10 אלף ₪ בשנת 99.
17  ניסינו ליצור קשר דרך בא כוח מרשתי שלח מכתבים לעוה"ד שלו, שייצג אותו, אבל שום דבר לא
18  היה מענה.
19  יש פסיקה מפורשת של העליון מציג. שניתן לעכב יציאתו של תושב חוץ.
20  בתיק החוצלי"פ היתה שיפקיד 100 אלף ₪ ועוד שני ערבים ואז יכול לצאת את הארץ, אנו לא
21  מעכבים את יציאתו מהארץ, הדיון כאן זה בגין הפקדת ערובה ולא בגין יציאתו.
22  היה צריך להגיש בקשת ערעור, הוא לא הגיש אלא ערעור. על החלטת כב' הרשמת שהיא מפעילה את
23  שיקול דעתה הוא מערער עליה, אין לי בעיה, אבל אף אחד לא מעכב יציאתו, גם הרשמת בהחלטתה
24  לא מעכבת, אמרה לו להפקיד ואז יוכל לצאת.
25  בהמשך לקביעה של טעמים מיוחדים גם כאן בימ"ש אומר במפורש שעל המבקש לתת טעמים
26  מיוחדים, אחד להוכיח את יכולתו האם יכול להפקיד את הערובה ואת זה לא עשה, וחוא גם לא
27  
28  נתי משפט פתח תקווה
29  [חותמת] ...... שלום ומשפחה
30  אני מאשר



בית משפט השלום בנתניה

עש"א 13-07-46625 תגר נ' שטראוס גרוף בע"מ

06 אוגוסט 2013

**ב"כ המערער:**

1   אי אפשר לבקש מתושב חוץ שנמצא כאן באקראי אחרי שנים רבות.

2   ערבות בנקאית זה כסף, אי אפשר לבקש ממנו להביא ערבים, שיהפכו להיות חייבים.

3   הערעור כאן הוא בזכות.

4

**ב"כ המשיבה:**

5

6   השיק האחרון לא נפרע. יש בידי מכתב ששלח בא כוחם הקודם של מרשתי, שבו אומר לו ב- 28.4.99

7   אתה לא עמדת בהסכם ואתה יש לך חוב.

8   הטענה שלא ידע מהחוב. החוב נוצר ונפתח נגדו תיק הוצל"פ, במסגרתו בוצעו הליכים רבים ונכבדים

9   כנגדו, עיקולים כולל עיקול מיטלטלין שבוצע בדירתו. הוא הגיע להסדר במסגרת תיק ההוצל"פ.

10  הוא ידע על זה. יש מסירה והמצאה מלאה. ידע על החוב.

11

12  **ב"כ המערער:**

13

14  מפנה לסעיף 66 א' וכן לסעיף 80: למעשה יש שתי אפשרויות, שני סעיפים בחוק ההוצל"פ

15  שמאפשרים לרשמת לעכב יציאתו. אנו דנים כאן על סעיף 66 א' (2).

16  אנו צריכים לחלוטים בשאלה אם היתה לה בכלל סמכות להפעיל הגבלה. מפנה להודעת הערעור

17  שכתבתי. היתה בקשה לנקיטת הליכים זו היתה לה המצאת אזהרה, במעמד פתיחת התיק, כאשר חזקה

18  טוען מפורשות שהחייב, המערער פה, גר בחו"ל ואישתו מצטרפת אליו הוא שכר דירה בטורקיה.

19  יודעים משנת 96' שהמערער אינו תושב ישראל, זו ידיעה שיפוטית.

20  בשנת 2004 היתה החלטה של ראש ההוצל"פ בקשה להזמין את החייב לחקירת יכולת.

21  בהסכם הפשרה כתוב שחברי היה צריך להגיש תגובה לתצהיר. אין תגובה אז אין משיב.

22  בהסכם כתוב שמשלמים 85 אלף דולר, 60 אלף דולר במעמד החתימה הראשונה, במעמד החתימה

23  ימסרו 10 שיקים.

24  לשאלת בימ"ש אם יש לי הוכחה שהשיק האחרון נפרע – אין למרשי אפשרות להוכיח את התשלום

25  אבל יש לי אפשרות להוכיח את השיק האחרון.

26  בנוסף לכך ערבות בנקאית על 25 אלף דולר, שהיה בתוקף למשך 3 שנים מיום חתימת ההסכם,

27  הערבות הבנקאית לו היה מצב שאחד מ- 10 שיקים תברר בהמשך שלא היתה חתימה יכול לפדות

28  את הערבות הבנקאית, השיקים משוכים מבנק הפועלים בארץ.

29  עו"ד גרוס שהיה אז בא כוח של המשיבה, כותב מכתב לב"כ הנוכחי שכל השיקים נפרעו במועדם

30  ויש שיק אחד לא חתום. אבל זה לא הגיוני שהתחזיקו בערבות בנקאית על 100 אלף ₪ למה ה פרעו.

31

32





בית משפט השלום בנתניה

עש"א 13-07-46625 תגר נ' שטראוס גרופ בע"מ

06 אוגוסט 2013

**ב"כ המשיבה:**

1  אני לא יודע. עו"ד גרוס טיפל.

2  אנו מטפלים בתיק משנה שעברה. 2012. אין לי מושג מדוע לא פרעו את הערבות הבנקאית.

3

4

**ב"כ המערער:**

5  לא היתה סמכות כאן לתת הגבלה. כל החוק שצריך להתייצב תוך 21 יום נחקק 3 שנים לאחר מכן.

6

7

**ב"כ המשיבה:**

8  התיק היה בהוצל"פ יש סעיף בחוק שמורה שאם החייב משנה כתובתו חובתו לעדכן את תיק

9  ההוצל"פ, החייב בחוסר תום לב במשך כל התקופה לא טרח לעדכן כתובתו.

10

11

12  **החלטה**

13

14  בפני ערעור על החלטת כב' הרשמת בבקשה שהגיש תושב חוץ לביטול עיכוב יציאתו מהארץ. ב"כ

15  המשיבה טוען בתחילה טענה מקדמית כי היה צורך בבקשת רשות ערעור ולא בערעור.

16  סעיף 80 לחוק ההוצל"פ קובע כי ניתן להגיש ערעור על החלטות ראש ההוצל"פ בהתאם

17  לסעיף 66 א' 1 1 – 2 לחוק. בסעיפים אלה מדובר בעיכוב יציאתו מן הארץ של חייב משכך סבורני

18  שהערעור הוגש כחוק. עליי לציין כי העובדה שהרשמת קבעה שניתן עיכוב יציאה מן הארץ בכפוף

19  להפקדת סך של 100 אלף ₪ וכן ערבויות של שני ערבים אזי מבחינת המבקש כאן למעשה לא

20  התקבלה בקשתו לעיכוב יציאתו מהארץ שכן הוא לא יכול להפקיד הסך על כן על החלטה זו ניתן

21  לערער כדין.

22

23  כעולה מהערעור ואף מדברי הצדדים כעת מדובר בתיק הוצל"פ שהחל בשנת 96' כאשר הצדדים

24  בשנת 99' הגיעו להסכם פשרה.

25  ב"כ המשיבה טוען כי השיק האחרון מהשיקים שהופקדו אשר היה ע"ס של 2,500 דולר לא היה

26  חתום ועל כן לא נפרע.

27  כעולה מדברי ב"כ המבקש ואף עיון בהסכם (סעיף 3 ג') מלמד כי ניתנה ערבות בנקאית ע"ס של 25

28  אלף דולר ע"יי המבקש כאן על מנת לתבטיח את תנאי הסכם הפשרה.

29  לא קיבלתי כל הסבר מדוע כאשר חובר כי שיק אחד לא נפרע לא נעשה שימוש בערבות

30  הבנקאית אשר היתה כמעט פי 10 מגובה סכום השיק ומדוע במשך כל השנים שעברו לא נעשה דבר

31  כנגד החייב.

32  המבקש הינו תושב חוץ אז מתגורר בטורקיה, בהתאם לתקנה 384 א' לתקנות סדר הדין האזרחי

33  כאשר מדובר בתושב חוץ לא ניתן עיכוב יציאה מהארץ אלא בנסיבות חריגות ומטעמים מיוחדים

3



בית משפט השלום בנתניה

עש"א 13-07-46625 תגר נ' שטראוס גרופ בע"מ

06 אוגוסט 2013

1   שירשמו. בנסיבות העניין אינני סבורה שהוצגו בפני נסיבות חריגות או טעמים מיוחדים כאשר
2   המבקש אינו תושב הארץ ואין זו עזיבה אלא חזרה לביתו. משכך ולאור האמור לעיל הנני קובעת כי
3   יש מקום לבטל את החלטת כב' ראש ההוצל"פ ולאפשר למשיב לצאת את הארץ ללא כל מתן
4   ערבויות.

5   עליי להוסיף גם כי המשיב מאז שנת 99' כעולה מהאמור בערעור הגיע לארץ כ- 54 פעמים ומעולם
6   לא נעצר כך שאף מהטעם הזה אין כל מקום לקבל הבקשה.

7
8
9
10   ניתנה והודעה היום ל' אב תשע"ג, 06/08/2013 במעמד הנוכחים.
11
12

סמדר קולנדר-אברמוביץ, שופטת

13
14
15
16



4

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Brooklyn, New York

Date this 16th day of May, 2018

BENJAMIN TAGGER

Plaintiff *Pro Se*

19

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Brooklyn, New York

Date this 14th day of May, 2018

BENJAMIN TAGGER

Plaintiff *Pro Se*