```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
BENJAMIN TAGGER,                                            :
                                                            :
                            Plaintiff,                      :   **MEMORANDUM DECISION
                                                            :   AND ORDER**
            - against -                                     :
                                                            :   18-cv-2923 (BMC)
THE STRAUSS GROUP LTD.,                                     :
                                                            :
                            Defendant.                      :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff *pro se* brings this action arising out of an April 15, 1999 settlement agreement executed in Tel Aviv, Israel between plaintiff and defendant's predecessor-in-interest concerning the foreclosure on a parcel of property located in Israel. Plaintiff claims that this Court has jurisdiction under 28 U.S.C. § 1332(a). Defendant moves to dismiss the complaint for, among other reasons, a lack of diversity jurisdiction and *forum non conveniens*. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

Plaintiff is an Israeli citizen.[1] During all relevant times, plaintiff lived in either Israel, Turkey, or the United States.[2] Plaintiff is currently a lawful permanent resident of the United States and is domiciled in New York.[3] Defendant is an Israeli company that develops and sells

---

[1] Although plaintiff claims that he "stopped being a legal resident of Israel in 1971," and that Israel considers him a "foreign resident who lives in Turkey," his United States Permanent Resident card provides that he was born in Israel. In addition, defendant has provided a copy of plaintiff's Israeli passport, which expires in 2019.

[2] The dates during which plaintiff lived in Israel, Turkey, and the United States are not clear from the complaint. It appears that plaintiff moved from Israel to the United States around 1971, relocated to Turkey in 1993, returned to Israel for a visit in 2013, and then went back to the United States.

[3] Plaintiff's Permanent Resident card indicates that he has been a resident of the United States since March 21, 1972.

food and beverage products internationally, including in the United States through its joint venture with PepsiCo Inc.[4] Defendant's headquarters and principal place of business is located in Israel.

On April 15, 1999, plaintiff and defendant's predecessor-in-interest entered into a settlement agreement in Tel Aviv concerning the foreclosure of property located in Israel. Under the terms of the agreement, plaintiff (as the debtor) was to pay an amount equal to U.S. $85,000. Plaintiff also signed a bank guarantee for $25,000, secured by property owned by plaintiff's wife. In consideration, defendant's predecessor-in-interest requested that a trustee cancel and vacate the foreclosure on the property, which the trustee could grant after all of the necessary preconditions for payment were met. The settlement agreement also provided that a "stop-exit order" (prohibiting plaintiff from leaving Israel) would be issued if plaintiff did not comply with its terms.

Plaintiff allegedly paid off his debt. However, in July 2011, defendant requested that the Israeli State Collections Office[5] take action against plaintiff for the value of the debt, including by prohibiting plaintiff's right to receive or renew his driver's license or passport, implementing a prohibition on plaintiff's right to use a credit card, restraining plaintiff's use of his bank accounts, and prohibiting plaintiff's right to leave Israel. Besides serving plaintiff's attorney in

---

[4] Defendant attaches an affidavit to its reply in support of its motion to dismiss, and explains that defendant is not registered to do business in New York; does not own, use, or possess real property in New York; does not maintain any offices in New York; nor does it have any employees or agents in New York. Defendant also explains that it entered into a joint venture with PepsiCo Inc., whereby each entity indirectly owns a 50% interest in Sabra Dipping Company LLC, which produces and sells hummus and other spreads. Sabra's headquarters are located in White Plains, New York, but Sabra is not a subsidiary of defendant and defendant does not control it. Plaintiff's original complaint asserted a claim against Sabra, but he withdrew it in his amended complaint.

[5] Plaintiff refers to the "Israeli State Collections Office" or the "Collection Office" in his complaint, so the Court has adopted plaintiff's terminology for the purpose of this Order. However, defendant's affidavit clarifies that this entity is actually the Law Enforcement and Collection System Authority (or the "Registrar"), which is an arm of the Israeli Ministry of Justice in charge of the enforcement of judicial decisions and debt collection.

May 2000, defendant allegedly did not provide any notice regarding the pending Collection Office action. The Collection Office issued a stop-exit order against plaintiff.[6]

At that time, plaintiff lived in Turkey and was not aware of the stop-exit order. When plaintiff visited Israel in 2013, he was not permitted to leave the country as a result of the 2011 decision. Plaintiff challenged the stop-exit order, claiming that he was a resident of Turkey and paid the entire debt owed under the settlement agreement. Defendant opposed. The Collection Office ordered plaintiff to deposit with it an amount of 100,000 NIS and obtain the signatures of two guarantors for his debt in order to lift the stop-exit order. Plaintiff appealed, and a magistrate judge lifted the stop-exit order. However, following a series of hearings and appeals, it appears that the Israeli enforcement proceeding is still ongoing and defendant is still attempting to collect plaintiff's allegedly outstanding debt.

Plaintiff claims that on November 26, 2013, an Israeli Bailiff's Office determined that "Claims relating to the identity of the persons responsible for delay and damage caused to debtor [Benjamin Tagger] as a result of this delay – these arguments will be heard in the competent Court and not in the Bailiff's Office." Plaintiff filed the instant lawsuit with this Court in response to this order.

Plaintiff claims that defendant's actions in seeking to collect the debt and a stop-exit order without notice to plaintiff deprived him of his liberty. Plaintiff also brings claims for defamation, conspiracy, negligence, obstruction of justice, fraud, negligent infliction of emotional distress, intentional infliction of emotional distress, interference with contractual relationships, and violations of human rights under the Universal Declaration of Human Rights

---

[6] As a result of the stop-exit order issued in July 2011, plaintiff was forced to prepare, present, and file an updated questionnaire and a waiver of confidentiality for documents concerning his incomes and expenses; was "seen by the authorities and business community as a capable person with the ability to avoid paying his debts"; and was placed on an "Exit Control List" issued by the Interior Ministry of Israel.

3

and the International Covenant on Civil and Political Rights.  Plaintiff seeks $10,000,000 in damages, in addition to an award of punitive damages, attorneys' fees and costs, as well as pre- and post-judgment interest.

## DISCUSSION

Plaintiff invokes federal jurisdiction on the basis of diversity of citizenship.  Defendant moves to dismiss for a lack of subject matter jurisdiction, improper service, lack of personal jurisdiction, and *forum non conveniens*.  Defendant also moves to dismiss for failure to state a claim.  Because the Court agrees with defendant that it lacks subject matter jurisdiction to hear this case, or that it would otherwise dismiss on the basis of *forum non conveniens*, the Court does not address defendant's arguments concerning service of process, personal jurisdiction, or failure to state a claim.

### I. Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss a complaint if the court determines that it does not have subject matter jurisdiction to hear the action.  See Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  In this analysis, the court must construe "all ambiguities and draw[] all inferences" in the plaintiff's favor.  Id.

Under § 1332(a)(2), "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State."

Plaintiff, as the party invoking federal jurisdiction, bears the burden of demonstrating that grounds for diversity exist and that diversity is complete." See Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322-23 (2d Cir. 2001) (internal quotation marks and citations omitted); see also Carden v. Arkoma Assocs., 494 U.S. 185, 187 (1990) (citing Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435 (1806)). Diversity is "complete" "if there is no plaintiff and no defendant who are citizens of the same State." Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998).

A district court does not have diversity jurisdiction over cases between aliens. Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 49 (2d Cir. 2012). Because plaintiff and defendant are each considered aliens under the diversity analysis, the Court does not have jurisdiction over this case and the complaint must be dismissed. See Arbaugh v. Y&H Corp., 546 U.S. 500, 502 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety.")

Defendant is an Israeli corporation with its principal place of business in Israel. A corporation is a citizen "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

Defendant is therefore considered to be a citizen of Israel. Plaintiff is a lawful permanent resident domiciled in the state of New York. Generally, an individual's citizenship is determined by his domicile. Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000). However, the history of § 1332(a) and an analysis of that history by courts within the Second Circuit instruct that plaintiff is also considered to be an alien for the purposes of diversity jurisdiction.

In 1988, Congress passed the Judicial Improvements and Access to Justice Act, which amended § 1332(a). The 1988 amendment added the following paragraph to the diversity

statute: "For the purposes of this section . . . an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." Pub. L. No. 100–702, § 203(a), 102 Stat. 4642, 4646. "The general view was that the purpose of this amendment was to remove federal jurisdiction from a case between a citizen of a U.S. state and a permanent resident alien of that same U.S. state because, in effect, such a lawsuit was between two citizens of the same state." H.K. Huilin Int'l Trade Co. v. Kevin Multiline Polymer Inc., 907 F. Supp. 2d 284, 286 (E.D.N.Y. 2012).

Courts disagreed, however, on whether the 1988 amendment simultaneously expanded federal jurisdiction by finding diversity in exactly the situation presented in this case – where a permanent resident alien and a non-resident alien were opposite of one another. "[T]he majority of courts in the Second Circuit did not read this section to so expand diversity jurisdiction." Id. Their reasoning was that "if a resident alien were always 'deemed' to be a citizen of the state she lived in, then one nonresident alien could bring suit in federal court against one resident alien without the presence of any United States citizens." Id. at 287.

In light of this ambiguity, Congress passed the Clarification Act in 2011, which removed the contested "deeming" provision and inserted the current language instructing that district courts do not have jurisdiction over actions between citizens of a state and citizens of a foreign state who are lawfully admitted for permanent residence and are domiciled in that state. Pub. L. No. 112–63, 125 Stat. 758 § 101. Thus, Congress clarified that it did not intend the 1988 amendment to expand diversity jurisdiction to suits between non-resident aliens and lawful permanent residents; it intended only to eliminate diversity jurisdiction for suits between a citizen of a state and a lawful permanent resident domiciled in the same state.

Marcus v. Five J Jewelers Precious Metals Industry Ltd., 111 F. Supp. 2d 445 (S.D.N.Y. 2000), is instructive.[7] There, the plaintiff was a citizen of Israel who had been domiciled in New York since 1984 and became a lawful permanent resident in 1985. The defendant was an Israeli corporation with its principal place of business in Israel. The court dismissed the complaint for lack of subject matter jurisdiction, because "all defendants and one plaintiff to the action [were] aliens, [and] complete diversity [was] lacking." Id. at 48.

Similarly, in this case, plaintiff's domicile is not operative for the purposes of diversity jurisdiction. Despite the fact that plaintiff has lawful permanent resident status, plaintiff is a citizen of Israel and is considered to be an alien. See Chan v. Chan, No. 13-CV-3331, 2015 WL 4042165, at *2 (E.D.N.Y. July 1, 2015) (collecting cases) ("Concerning legal permanent residents, diversity jurisdiction is not available between a resident alien and a foreign alien."). Because plaintiff and defendant are both aliens, the Court lacks subject matter jurisdiction over this action, and the complaint is dismissed.

## II.    *Forum Non Conveniens*

Even if the Court did have jurisdiction to hear this action, the Court would grant defendant's motion to dismiss for *forum non conveniens*. There is little – if any – connection between this Court and the events giving rise to plaintiff's cause of action.

"*[F]orum non conveniens* is a discretionary device permitting a court in rare instances to 'dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim.'" Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 100 (2d Cir. 2000) (quoting PT

---

[7] This is true even though Marcus was decided 11 years before the Clarification Act was passed. As discussed above, the expansion of federal jurisdiction to this set of facts was consistent with a strict reading of the 1988 amended version of § 1332(a) (which was operative in 2000). Marcus is one example of a court within the Second Circuit, facing similar facts to the instant complaint, that refused to read the 1988 amended version of § 1332(a) so broadly, and dismissed a complaint over which it could have technically exercised subject matter jurisdiction. The subsequent passing of the Clarification Act instructs that the Marcus court's outcome – dismissing the complaint for lack of subject matter jurisdiction – was correct.

7

United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1998)). The Second Circuit has articulated a three-step process to determine whether *forum non conveniens* is an appropriate grounds for dismissal of a given case. First, a court must determine the degree of deference owed to plaintiff's choice of forum. Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003). Second, a court must determine whether an adequate alternative forum exists. Id. Third, a court must balance several factors involving the interests of the parties and the public. Id.

In reviewing a motion to dismiss for *forum non conveniens*, a court should assume that the plaintiff's choice of forum will stand, unless the defendant meets its burden of proving that analysis otherwise weighs in its favor. See Iragorri v. United Techs. Corp., 274 F.3d 65, 71 (2d Cir. 2001). "[I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Id. This is true even if the plaintiff has filed suit in his home forum. Id.

With respect to the first step in the analysis, the Court disagrees with defendant and finds that plaintiff's choice of forum is entitled to deference. Although the Second Circuit has specifically rejected "a rigid rule of decision protecting U.S. citizen or resident plaintiffs from dismissal for *forum non conveniens*," Wiwa, 226 F.3d at 102, lawful permanent resident plaintiffs remain subject to the same analysis as any other plaintiff. Under that analysis, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." Iragorri, 274 F.3d at 72.

Here, plaintiff is a lawful permanent resident and has a bona fide connection to the Eastern District of New York (as he resides in Kings County). Plaintiff also claims that he is a lung cancer patient[8] and suffers from atrial fibrillation, is dependent on Medicare, and has a nominal income, all of which complicate extensive foreign travel. These facts certainly warrant deference to plaintiff's choice of forum. However, this deference is ultimately overcome by the fact that, besides plaintiff's lawful permanent resident status, this lawsuit bears virtually no bona fide connection to the United States.

Turning to the second step, defendant claims that the Israeli court system presents an adequate alternative forum for the parties' dispute.[9] "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Pollux, 329 F.3d at 75. Here, plaintiff's complaint demonstrates that the Israeli court system is an adequate alternative. Plaintiff has appeared before numerous Israeli courts and agencies in connection with the underlying dispute between the parties, and the Court has no reason to think plaintiff cannot continue to litigate these issues in that forum. Because defendant is an Israeli corporation with its principal place of business in Israel, and because defendant has already appeared in the underlying dispute, it is also clear that defendant is

---

[8] Plaintiff attached to his opposition a letter from his doctor advising the Court that plaintiff had a resection surgery for lung adenocarcinoma on February 28, 2017, which requires a follow up appointment every six months for five years, and an annual follow up after the fifth year. Plaintiff does not appear to be undergoing any other regular cancer treatment.

[9] Defendant does not make this argument, but there also exists a second adequate alternative forum to hear this lawsuit – a New York State court. Defendant contests that it is subject to personal jurisdiction in New York, but that does not mean that a New York court cannot competently hear this case. However, even if a New York court is not an adequate alternative, an Israeli court is. See e.g., Wilson v. ImageSat Int'l N.V., No. 07 CIV. 6176, 2008 WL 2851511, at *6 (S.D.N.Y. July 22, 2008), as amended (July 30, 2008) (finding Israel to be an adequate alternative forum where most defendants consented to suit in Israel and plaintiff was subject to jurisdiction of Israeli court); Sussman v. Bank of Israel, 801 F. Supp. 1068, 1079 (S.D.N.Y. 1992) (finding Israel to be an adequate alternative forum where Israeli law governed propriety of defendants' conduct, majority of witnesses resided in Israel, plaintiff did not show that any evidence was located in the United States, the majority of documents were in Hebrew, and Israel had a greater public interest in the issues raised by the complaint than the United States).

amenable to suit in Israel. Finally, plaintiff's complaint indicates that the stay-exit order was lifted, so the Court has no reason to believe that plaintiff cannot travel to Israel without risking his detention.

As for step three, the Court must balance several factors to determine whether the case should be dismissed so that it can be brought before an Israeli court. "[F]actors that argue against *forum non convenien*s dismissal include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." Iragorri, 274 F.3d at 72. However, if it appears that the plaintiff was motivated by forum-shopping – namely to benefit from favorable local laws, the generosity of juries, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant – "the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts." Id.

Besides the convenience factors mentioned in step one, plaintiff claims that he could not obtain counsel in Israel on a contingency fee basis, so he is unable to bring this lawsuit there. However, he is before this Court *pro se*, so the Court is not persuaded that a lack of counsel at plaintiff's preferred hourly rate should prevent his case from being heard in a different forum. In addition, it is likely that much of the evidence relating to plaintiff's suit will involve what the Israeli court system knew and what it based its decisions on – and this evidence will be much easier to obtain in front of an Israeli court rather than a United States court.

The facts underpinning this lawsuit and the evidence necessary to litigate it weigh strongly in favor of dismissing for *forum non conveniens*. The dispute arises out of a 1999

contract between two Israeli citizens, which was executed in Israel, involves an ongoing Israeli debt collection process, and concerns a parcel of real property located in Israel. Plaintiff claims that the impetus for his complaint was an Israeli Bailiff's Office order indicating that his claims needed to be heard in "the competent Court" (rather than by the Bailiff's Office). This Court is likely not the court that the Bailiff's Office envisioned; rather, plaintiff's claims are properly heard before a competent *Israeli* court.

## CONCLUSION

Defendant's [21] motion to dismiss is GRANTED.

**SO ORDERED.**

Dated: Brooklyn, New York　　　　　　　　　　　　　　U.S.D.J.
　　　　September 12, 2018

11